2011 Ark. App. 430

**Larry TUCKER and Jessica Tucker, Appellants**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, Appellee.**

**No. CA 11–4.**

Court of Appeals of Arkansas.

June 15, 2011.

Rehearing Denied July 27, 2011.

---

Leah Beth Lanford, Little Rock, for Appellant.

Melissa Bristow Richardson, Jonesboro, Tabitha Baertels McNulty, Little Rock, for Appellee.

JOHN MAUZY PITTMAN, Judge.

This is an appeal from an order terminating the parental rights of appellants Larry and Jessica Tucker to their three minor children, J.T.1, D.T., and J.T.2. Appellants have filed separate appeals arguing that the evidence is insufficient to support the trial court's findings that they failed to remedy the conditions that caused the removal of the children and that termination of parental rights was in the children's best interest. We affirm.

In late June 2009, D.T., age nine, and his brother, J.T.1, age six, knocked on the door of a stranger to ask for food and water. The children were looking for their father, appellant Larry Tucker. Mr. Tucker and the children had been living in the home of Mr. Tucker's niece, Angela Tucker, when Mr. Tucker was admitted to the Conway County Hospital and placed on life support because of congestive heart failure and COPD. The wandering children, bruised and dirty, were picked up along the side of a highway by a deputy sheriff. When Angela Tucker picked up the children from the sheriff's office, she was accompanied by her father, Billie Tucker, who is a Level II registered sex offender. Because of this, and because Angela Tucker's own children were in foster care due to an open environmental-neglect case, the Arkansas Department of Human Services (DHS) executed a seventy-two-hour hold on D.T. and J.T.1 on June 26, 2009.

After a probable-cause hearing on July 1, 2009, it was found that appellants Larry and Jessica Tucker were involved in an ongoing divorce proceeding. It was learned that the parties also had a twelve-year-old daughter, J.T.2, and that all three children had previously been placed into foster care because of a previous episode in which Larry Tucker had been hospitalized for three or four months. Larry Tucker testified that he was arrested for assault, battery, and terroristic threatening about one month earlier, and that J.T.2 then went to live with Jessica Tucker. He said that Jessica "stole" the girl and her SSI benefits. The trial court found that Larry Tucker was not credible or truthful unless pressed and that he presented to the court unkempt and with an offensive, foul odor indicative of a severe hygiene problem that reflected upon his ability to parent children. By a separate order of July 9, 2009, the court ordered that J.T.2 be taken into emergency custody because Larry Tucker was her custodian and because her mother, appellant Jessica Tucker, presented in an erratic fashion on the telephone. J.T.2 was released to her

mother following a probable-cause hearing on July 15, 2009.

On July 24, 2009, the divorce court granted legal custody of J.T.2 to her half-sister, Crystal Jones. Within two weeks, on August 4, 2009, J.T.2 reentered foster care because Crystal Jones, who could not be found, had left the girl in the custody of Larry Tucker, who in turn had taken her with him when he drove himself to the Conway County Hospital, where he was again admitted in serious condition and placed on life support because of complications related to COPD. Because she had no caregiver, and because Crystal Jones had failed to bring J.T.2's eyeglasses, inhalers, and Lupus medications when she left J.T.2 with her father, DHS obtained an order of emergency custody. Jessica, although personally served and ordered to appear, did not appear at the adjudication hearing held August 14, 2009. The trial court consolidated J.T.2's case with that involving her two brothers, found all three children to be dependent-neglected by virtue of neglect and inadequate supervision, approved the case plan developed by DHS, and notified appellants that failure to remedy the conditions causing removal on or before June 26, 2010, could result in termination of their parental rights.

A review hearing was held on November 13, 2009. The trial court reviewed medical, psychological, and developmental reports and found that neither parent could adequately provide for the health and safety of the children if they were returned to either home, noting Larry Tucker's continuing medical and parenting problems and Jessica Tucker's instability. The court allowed both parents limited, supervised visitation with the children. With respect to the visitation, Larry Tucker was ordered not to ask J.T.2 for money or advise her not to cooperate with DHS; Jessica Tucker was ordered to not bring a camera or cell phone with her on visits after being observed by a caseworker at visits using a camera containing nude photos of men. Larry Tucker was found to have partially complied with the case plan; Jessica Tucker's compliance was found to be almost nonexistent. Both were ordered, *inter alia*, to undergo psychological evaluations and counseling.

A second review hearing was held on February 12, 2010. The court reviewed counseling and progress reports concerning the children and found that both parents had partially complied with the case plan, with Larry making some progress and Jessica making minimal progress toward rectifying the conditions causing removal. The court noted that Jessica had continued to miss visits with the children, that she had not appeared at the hearing, and that neither her attorney nor DHS had a working telephone number at which she could be reached. The court further noted that Larry's visitation had been stopped because he had been initiating discussions about and disparaging Jessica with the children during visitation contrary to prior orders. Larry's visitations were reinstated but DHS was directed to terminate them automatically should he again discuss Jessica with the children.

A permanency-planning hearing was held on June 2, 2010. The court reviewed psychological reports relating to the parents and progress reports concerning the children and found that DHS had provided reasonable family services to permit reunification with the father or mother, that Jessica had complied with the case plan and court orders but had made only minimal progress toward alleviating the conditions causing removal, that Larry had substantially complied with the case plan but had failed to learn anything from the services provided or to demonstrate an ability to appropriately parent the children,

and that the permanency plan for the children would be adoption.

After a hearing on September 23, 2010, the court found by clear and convincing evidence that termination of parental rights was in the children's best interest, that the children had been adjudicated dependent-neglected and continued to be out of the custody of the parents for twelve months, and that, despite reasonable efforts by DHS to rehabilitate the parents and correct the problem, both parents had failed to remedy the conditions causing removal. Both appellants' parental rights were terminated, and this appeal followed.

■ In cases where the issue is one of termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Trout v. Department of Human Services*, 359 Ark. 283, 197 S.W.3d 486 (2004). Termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Id.* Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well being of the child and must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children. *Camarillo–Cox v. Arkansas Department of Human Services*, 360 Ark. 340, 201 S.W.3d 391 (2005). Pursuant to Ark.Code Ann. § 9–27–341(b)(3) (Repl.2009), an order terminating parental rights must be based upon clear and convincing evidence, *i.e.*, proof that will produce in the fact-finder a firm conviction as to the verity of the allegation sought to be established. *Camarillo–Cox v. Arkansas Department of Human Services, supra.* A finding is clearly erroneous when the appellate court is, on the entire evidence, left with a definite and firm conviction that a mistake has been made. *Id.* In deciding whether a finding of the trial court is clearly erroneous, we give great deference to the superior opportunity of the trial court to observe the parties and judge the credibility of witnesses. *Id.*

Appellant Larry Tucker argues that the trial court erred in terminating his parental rights because he complied with the case plan. Appellant Jessica Tucker argues that the trial court erred in terminating her parental rights because she was making progress toward completing the case plan. Both appellants argue that the trial court erred in finding that termination of parental rights was in the children's best interest because there was insufficient evidence of adoptability.

■ First, we note that progress toward or even completion of the case plan is no bar to termination of parental rights. It is well settled that evidence that a parent begins to make improvement as termination becomes more imminent will not outweigh other evidence demonstrating a failure to comply and remedy the situation that caused the children to be removed in the first place. *Camarillo–Cox v. Arkansas Department of Human Services, supra.* Nor is completion of the case plan determinative. What matters is whether completion of the case plan achieved the intended result of making a parent capable of caring for the child. *Wright v. Arkansas Department of Human Services*, 83 Ark.App. 1, 115 S.W.3d 332 (2003). The evidence presented at the hearing, including testimony that Larry Tucker was threatened with a knife while intoxicated at Jessica Tucker's residence shortly before the termination hearing, abundantly supports the finding that neither parent has achieved a degree of stability that would permit the safe return of their children.

■ Second, adoptability is not an essential element in a termination case. It is

merely a factor that must be considered by the trial court in determining the best interest of the child. *Renfro v. Arkansas Department of Human Services*, 2011 Ark. App. 419, 385 S.W.3d 285. In any event, an adoption specialist testified at the termination hearing, opining that all three children were adoptable, either as a sibling group or individually. The evidence of the parents' chronic instability and discord, and the impact of these dynamics upon the children, was such that returning the children to their parents was not a viable option—neither parent, in fact, had progressed beyond supervised visitation by the time of the termination hearing. Considering this in light of the difficulty of remedying Jessica Tucker's psychological instability within a reasonable length of time, and the absence of any evidence of a suitable relative placement or caretaker in the event that Larry Tucker's severe and chronic illness should lead to further hospitalization, we hold that the trial court did not err in finding that termination of appellants' parental rights was in the children's best interest.

Affirmed.

ROBBINS and GLOVER, JJ., agree.