2012 Ark. App. 369

**Misty REED (now Schrader), Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees.**

**No. CA 12–130.**

Court of Appeals of Arkansas.

May 30, 2012.

Deborah R. Sallings, Arkansas Public Defender Commission, Little Rock, for Appellant.

Tabitha Baertels McNulty, Office of Chief Counsel, Keith L. Chrestman, Chrestman Group, PLLC, Jonesboro, for Appellees.

JOHN B. ROBBINS, Judge.

This is an appeal by appellant, Misty Reed, regarding the termination of her parental rights to her two children, HR (a daughter born in 2003) and KR (a son born in 2005), entered by the Craighead County Circuit Court in November 2011.[1] She argues that the order terminating her parental rights should be reversed because it was clearly erroneous for the trial court to conclude that termination of her rights was in her children's best interest. Appellee Arkansas Department of Human Services ("DHS") and the children's attorney ad litem disagree with her, asserting that the termination order should be affirmed. We affirm.

We review termination of parental rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* Grounds for termination of parental rights must be proved by clear and convincing evidence. *Camarillo–Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark.App. 302, 952 S.W.2d 177 (1997). It must also be proved that termination of parental rights is in the children's best interest. *Smith v. Ark. Dep't of Health & Human Servs.*, 100 Ark.App. 74, 264 S.W.3d 559 (2007). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). We give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* Where there are inconsistencies in the testimony presented at a termination hearing, the resolution of those inconsistencies is best left to the trial judge, who heard and observed those witnesses first-hand. *Dinkins, supra.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We are not left with such a conviction in this instance.

Appellant argues that the trial court clearly erred in determining that termination of parental rights was in her children's best interest. The best-interest inquiry requires consideration of two factors: the likelihood of adoption and the potential of harm to the children if returned to their mother's custody. *Tucker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 430, 389 S.W.3d 1. However, those factors that must be taken into consider-

---

1. The children's father, Leonard Reed, does not appeal the termination of his parental rights.

ation do not, themselves, have to be supported by clear and convincing evidence. *Id.* Potential harm must be viewed in a forward-looking manner and in broad terms. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. Appellant asserts that the evidence was severely lacking on both of these factors, rendering the best-interest finding reversible. We disagree with her.

These children were taken from appellant's custody in July 2009 and were determined to be dependent-neglected in November 2009. The basis for removal was the allegation that appellant sexually abused her then-stepchildren. The allegation of sexual abuse was determined to be true for purposes of the adjudication. Appellant was ordered to comply with the case plan, including that she maintain a clean, safe, stable home; that she obtain and keep stable employment in order to support herself and the children; that she submit to a psycho-sexual assessment; that she take parenting classes; and that she visit her children as permitted. Over the next several months, appellant was determined to have complied with the case-plan requirements in many respects. The allegation of sexual abuse was later determined to be unfounded for purposes of having her name placed on the child-abuse registry, but even so, appellant demonstrated instability that prevented the return of her children.

At the fifteen-month review hearing in October 2010, the goal was changed from reunification to termination of parental rights. DHS filed a petition to terminate parental rights in January 2011, which was heard in April and June 2011.

The evidence revealed several undisputed facts during DHS's nearly two-year involvement with appellant and her children, those being that (1) appellant divorced the father of these children in September 2009, shortly after the children came into DHS custody in July 2009; (2) she became engaged to a man who was charged with, and later pleaded guilty to, three counts of rape; (3) after her fiancé was sentenced to life in prison in November 2010, she began residing with another man whose father was a convicted child molester; (4) appellant lived with her new boyfriend in a rent house provided by the farmer who employed her new boyfriend; and (5) appellant had no home of her own, no proof to substantiate that she held a stable job, and no proof that her income would be sufficient to support herself or her children.

Appellant explained that although she moved around a lot, she continually had a suitable place for her children to rejoin her. Appellant stated that she had been employed for about six months, working for a family member who owned a fishing-lure company, and was currently making about $500 per week. Appellant did not have a checking account and did not provide any pay stubs to document these wages, although she acknowledged a duty to provide such evidence to DHS. Appellant testified that she was bonded to her children and that they loved her too. Appellant contended that she could get along with her ex-husband when it came to their children's needs, even though he was abusive to her during their marriage. She said that her prior fiancé was in prison for rape and that she finally was in a stable relationship with a man she and her family had known for years.

The family case worker, Amber Phillips, testified that appellant was cooperative but that it was difficult to find her at any of the residential addresses she gave. Ms. Phillips said that appellant provided pay stubs from "seasonal work" in March, April, June, and July 2010, totaling approximately $1000, but nothing more recent than that despite requests for such

evidence. Ms. Phillips believed appellant's supervised visits with her children went well, and she completed parenting classes and a psychological evaluation, but there were never any trial placements attempted during the case. She opined that the children were healthy overall, although KR was taking medication for ADHD and HR had exhibited some behavior issues at school. She believed that their ages made them adoptable. Ms. Phillips questioned appellant's judgment regarding relationships and appellant's lack of stable housing and income, adding concern that there was a "true" finding of sexual abuse by appellant's older son (who lived with appellant's mother) against HR. This led to Ms. Phillips's opinion that there was potential harm to the children if returned to their mother's care.

The DHS supervisor, Terry Blanchard, testified to her opinion that these young children were adoptable, that their adoption packets were done, and that the children had some issues but not medical ones, pointing to some behaviors that were being addressed in counseling. Ms. Blanchard said that she had worked on many of these kinds of cases, and she would not give a recommendation that there was "a very high chance" of adoption if it were not so. She added that potential adoptive homes had not been sought out because their parents' parental rights had not yet been terminated.

A CASA volunteer, Shirley Cato, testified about her experience with appellant and the children. Ms. Cato said she visited appellant at several residences, including an unfurnished and unclean trailer in Paragould, a home in Bay with her later-convicted fiancé, and a trailer near Lake City. She noted that the children had "come a long way" in the care of their foster parents, although the children were bonded to their mother and expressed a desire to reunite with her.

Appellant's mother, Donna Felton, testified that her daughter was a good mother and that she should have her kids back in her custody. Ms. Felton agreed that she was raising appellant's twelve-year-old son, whom appellant had at age sixteen, and that her daughter had some issues with transient housing and work, but she maintained that appellant was ready to have her children back.

Appellant, a woman in her late twenties, testified that she had an abusive relationship with these children's father, but they were divorced, her next boyfriend was sent to jail and out of their lives, and her current boyfriend was an appropriate person to be around her children. Appellant said that her boyfriend's father, who had a conviction for sexual abuse, was never around her children, nor would she permit him to be. She said she had done all that DHS asked of her, there were no drug or alcohol issues, she loved her children and they were bonded to her, and it was time for her eight- and six-year-old children to be returned to her custody.

In conclusion, the attorney ad litem and the attorney for DHS urged termination of parental rights, primarily based upon appellant's instability and the children's need for permanency. After consideration of the evidence presented over two hearing dates, the trial court concluded that the preceding events, and appellant's lack of credibility, supported termination of her parental rights. The trial court found that the children had a "high likelihood" of adoption, supported by the testimony from DHS personnel who stated that the children were young and not disadvantaged by medical or serious behavioral problems. The trial court found that appellant's lack of her own home and

steady employment evidenced potential harm.

 On appeal, appellant does not contest that grounds were proved; rather, she contends that her children's best interest was not supported by evidence that her children were likely to be adopted or that she posed any potential harm to their well being. We disagree.

The trial court undoubtedly gave consideration to the likelihood of these children being adopted. Although DHS had not moved forward with adoption, given that parental rights had not been terminated, the paperwork was ready, and the opinions of the DHS supervisor and the case worker assigned to this case were taken into consideration. The trial court, given its knowledge of these children throughout the case, believed it highly likely that these children would be adopted. The applicable statute, Ark.Code Ann. § 9–27–341(b)(3) (Repl.2009), does not require the trial court to identify a particular potential adoptive home or find that the children will likely be adopted. *See Anderson v. Ark. Dep't of Human Servs.,* 2011 Ark. App. 526, 385 S.W.3d 373; *Fortenberry v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 352, 2009 WL 1153256. On de novo review, we cannot conclude that the trial court failed to meet the statutory requirement to consider the likelihood of adoption.

As to potential harm, the trial court did not clearly err. This factor is to be considered in broad terms, in a forward-looking manner, and here the potential harm was evident. Appellant did not demonstrate that she was able to provide a stable home or sufficient income. The trial court found her credibility wholly lacking. Appellant did not demonstrate appropriate decision-making regarding her relationships and roommates. The potential for harm to the children was considered, particularly so where appellant does not contest the proof of grounds to support termination of her rights.

We hold that the trial court did not clearly err in finding that termination of appellant's parental rights was in the best interest of HR and KR.

Affirmed.

GLADWIN and GRUBER, JJ., agree.