SLIP OPINION  Cite as 2014 Ark. App. 282

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-14-23

| | |
|---|---|
| | **Opinion Delivered** May 7, 2014 |
| TRACY SULLIVAN LOVEDAY<br>APPELLANT | APPEAL FROM THE LONOKE<br>COUNTY CIRCUIT COURT<br>[NO. JV-2012-120] |
| V. | |
| | HONORABLE BARBARA ELMORE,<br>JUDGE |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND M.S., A.L.,<br>AND K.L., MINOR CHILDREN<br>APPELLEES | |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

Tracy Sullivan Loveday appeals the termination of her parental rights to three of her children, M.S., A.L., and K.L.[1] She challenges both the statutory grounds for termination and the circuit court's best-interest finding. We affirm.

On 24 May 2012, the Arkansas State Police Crimes Against Children Division received a report of child maltreatment involving eight-year-old M.S. The report indicated that M.S.'s father, Steven Sullivan, was sexually molesting her and that Sullivan and M.S.'s mother, Loveday, were selling drugs out of their home. Sullivan had recently been in prison for DUI and had been on parole for less than a year. Loveday was on probation for drug charges.

A family service worker interviewed M.S., who reported that her father had been

---

[1]Steven Sullivan, M.S.'s father, and Scott Lang, A.L. and K.L.'s putative father, also had their parental rights terminated, but they are not parties to this appeal.

sexually abusing her "since before he went to prison" and that her mother had known about the abuse for the past two weeks. Loveday admitted that she had recently been using methamphetamine and had failed a drug screen for THC, meth, and benzodiazepine. Loveday acknowledged that she had learned of her daughter's abuse about two weeks before the interview but had stayed with Sullivan while trying to "get a plan." Loveday admitted she was homeless and could not stay at a shelter because of her drug use.

The Department of Human Services (DHS) exercised a seventy-two-hour hold on M.S. and one-year-old twin siblings, A.L. and K.L., on 25 May 2012. On 30 May 2012, DHS petitioned the Lonoke County Circuit Court for emergency custody and a finding of dependency-neglect. The court granted the motion for emergency custody and, in an order dated 26 June 2012, adjudicated the children dependent-neglected. The order noted that DHS had previously been involved with the family and that there had been seven total reports on the family including one true report for substance misuse in 2005. The case goal was reunification with Loveday, and she was granted visitation conditioned upon passing a drug test.

A review hearing in August 2012 revealed that Loveday had completed her drug-and-alcohol assessment and was attending meetings at Little Rock Outreach. The review order also noted that Loveday was submitting to random drugs screens, had failed a drug screen on August 2, and had plans to begin parenting classes. Another review hearing, held in January 2013, noted that Loveday had completed a psychological evaluation but had not completed the twelve hours of relapse prevention recommended as part of her drug-and-alcohol

assessment. The order noted that Loveday was living in Pulaski County and reported that she was attending NA/AA meetings, although she had not provided proof of that attendance. The order also stated that Loveday had not contacted DHS since the beginning of December and that her visitation with the children was suspended. And finally, at a permanency-planning hearing held in May 2013, the court found that Loveday had not visited the children or completed any services since December 2012.

On 7 June 2013, DHS and the children's attorney ad litem filed a joint petition for termination of parental rights. The petition alleged three grounds: (1) the juveniles have been adjudicated by the court to be dependent–neglected and have continued to be out of the custody of the parents for twelve months, and despite meaningful efforts by DHS to rehabilitate the parents and correct the conditions that caused removal, those conditions have not been remedied; (2) other factors or issues arose subsequent to the filing of the original petition for dependency–neglect that demonstrate that return of the juveniles to the custody of the parent is contrary to the juveniles' health, safety, or welfare and that despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors; (3) the parent has abandoned the juveniles. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*), (iv), and (vii)(*a*) (Supp. 2011).

At the termination hearing, Loveday acknowledged that she was currently incarcerated on a three-year sentence and that she was not sent to prison until almost a year after her children had been taken out of her custody. She stated that she had not actively participated in the case and that she "didn't want to sacrifice my life for my kids." She testified that she

3

had quit using drugs in October 2012; but she also stopped visiting the children because she was "on the run from the law." She also testified that she had now "given her life over to God" and had no desire to do drugs. Loveday said that she expected to be released from prison early due to overcrowding and planned to get a job and a place to live, report to her parole officer, and follow the case plan. She expressed a desire to reunite with the children once she was released but acknowledged that it would take a minimum of six months to establish an adequate amount of stability.

Kristine Phillips, a family service worker who was the original caseworker on this case, testified that, in the beginning, Loveday was somewhat compliant with the case plan, but that drugs were an ongoing issue throughout the case, and after a certain point Loveday quit participating altogether. Leeisha Williams, another family service worker, testified that she was assigned to the case in April 2013. At that time, she explained, Loveday had been out of contact with DHS for six months; and since that time Loveday had not visited the children or called to check on them. Williams agreed that, from DHS's perspective, nothing else could be done to bring the parents into compliance and that giving more time to them would not be beneficial. She also agreed that Loveday had not shown a "genuine sustainable investment in complying with the case plan goals or court orders."

The foster mothers for both M.S. and the twins (who were placed together in a foster home) testified that the children were doing well and that they were willing to keep the children permanently. Finally, Kathleen Armstrong, a DHS adoption specialist, testified that she did not see any factors that would prohibit the adoption of the children.

After hearing arguments from counsel, the court ruled that it was terminating Loveday's parental rights. The written order, entered on 8 October 2013, explained that Loveday's rights were terminated based on the following:

> a. [Loveday] has failed to participate in this case nor has she been compliant with the terms of the case plan or the orders of this court and has not remedied the conditions which caused removal. [M.S.], [A.L.], and [K.L.] have remained out of the home of their parents in excess of 12 months and the grounds pertaining to 9-27-341(b)(3)(B)(i)(a) wherein the juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parents for twelve months and despite meaningful efforts by the department to rehabilitate the parents and correct the conditions that caused removal, those conditions have not been remedied by [Loveday].
>
> b. Under Ark. Code Ann. § 9-27-341(b)(3)(B)(viii) The parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juveniles' life. . . . [Loveday] is sentenced to 36 months.
>
> . . . .
> e. As to [Loveday] — The Court specifically finds that [Loveday] chose to save herself, rather than her children. There is no sign of progress as to [Loveday's] drug use. The Court finds that she is not using drugs now, because she is incarcerated. [Loveday] failed to protect her children from Mr. Sullivan even though she knew of the allegations of sexual abuse. [Loveday] is now sentenced to three years in prison and cannot currently care for her children. Before [Loveday] was incarcerated, she failed to remedy the conditions that caused the children to come into care.

The court also found that it was in the best interest of the children that Loveday's parental rights be terminated, especially considering the potential harm caused by returning the children to their parents' custody and the children's adoptability. Loveday appealed.

A circuit court's order that terminates parental rights must be based on findings proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2011); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing

5

evidence is proof that will produce in the fact-finder a firm conviction on the allegation sought to be established. *Dinkins, supra.* Proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, 374 S.W.3d 205.

On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Dinkins, supra.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit judge to assess the witnesses' credibility. *Id.*

Loveday argues that there was insufficient evidence to support the "failure to remedy" ground for termination relied on by the circuit court. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*). As explained above, this ground provides that termination is appropriate if the court finds, by clear and convincing evidence, that the juveniles have been adjudicated to be dependent-neglected and have continued to be out of the parents' custody for at least twelve months, and despite meaningful efforts by DHS to rehabilitate the parents and correct the conditions that caused removal, those conditions have not been remedied.

Loveday contends that the children were removed because she failed to protect M.S. from sexual abuse, her drug use, and her lack of safe housing. She does not dispute that those conditions were present at the time of removal; instead, she argues that those issues had been remedied before the termination hearing convened. She argues that the hearing testimony

6

showed that she was clean and sober, that she hoped to soon transfer into a parole program that would assist her with housing and employment, and that she was recently divorced from Sullivan, who had abused M.S.[2]

DHS argues that the circuit court's failure-to-remedy finding was not clearly erroneous. DHS argues that Loveday's drug use, which was the cause of her neglect of the children, continued for several months even after the children had been taken, which is enough to support a failure-to-remedy finding. *See Gutierrez v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 575.

We affirm on this point. The circuit court did not credit Loveday's assertions that she no longer had a drug problem; instead, it found that she was currently not using drugs because she was incarcerated. Nor had Loveday established safe and stable housing for herself and the children before the termination hearing. Thus, we hold that the circuit court did not clearly err in finding that Loveday had failed to remedy the conditions that caused removal. Because we affirm the court's finding on this statutory ground, and proof of only one statutory ground is sufficient to terminate parental rights, *Gossett*, *supra*, we need not address Loveday's argument concerning the alternative statutory ground relied on by the court in its order.

Loveday also argues that there is a "complete lack of evidence supporting the trial court's finding that termination was in the children's best interest." Specifically, Loveday denies that there was any evidence to show potential harm to the children if returned to her

---

[2]Sullivan testified at the hearing that he and Loveday were divorced the day before the termination hearing.

care after her release from prison. In its order, the court found that return of the children to their parents could harm the juveniles' health and safety because the parents "are not appropriate to care for the juveniles. The parents do not have an appropriate lifestyle. The parents are not a fit and proper parent for the juveniles. Additionally at the present moment they are incarcerated and are unable to care for the children." The harm referred to in the termination statute is "potential" harm; the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *L.W. v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 44, 380 S.W.3d 489. The potential-harm evidence, moreover, must be viewed in a forward-looking manner and considered in broad terms. *Id.*

Loveday argues that the "tremendous progress" she made in the eleven months prior to the termination hearing, and the fact that she had been drug-free since October 2012, show that she was "perfectly fit to take custody of her children within six months of her imminent release." She also asserts that giving her this additional time to prove that she could raise her children would not be contrary to the requirements or purpose of the Juvenile Code, and she concludes that the court "erred in not giving [her] additional time to show she was capable of maintaining sobriety, to obtain housing and employment, and raise her children."

In response, DHS argues that potential harm was shown from Loveday's failure to follow the case plan and court orders, her failure to obtain and maintain stable housing, and her continued use of illegal drugs. *See Allen v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 288, 384 S.W.3d 7 (noting that appellant's continued use of illegal drugs showed potential

harm to the children); *L.W.*, *supra* (stating that a failure to comply with court orders can indicate potential harm); *Latham v. Ark. Dep't of Health & Human Servs.*, 99 Ark. App. 25, 31, 256 S.W.3d 543, 547 (2007) ("[T]he trial court did not err in terminating Latham's parental rights to B.L. where Latham failed to prove that he could provide for one of B.L.'s most basic needs—a stable home.").

We also affirm on this point. The circuit court's best-interest determination was based in large part on its assessment of Loveday's credibility, and we defer to that assessment. *Dinkins*, *supra*. In addition, there was no guarantee that Loveday's release from prison was "imminent" or that she could establish the requisite stability within six months as she insisted. The goal of section 9-27-341 is to provide permanency in a child's life in circumstances in which returning the child to the family home is contrary to the child's health, safety, or welfare and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007). A child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849.

Affirmed.

PITTMAN and GRUBER, JJ., agree.

*Leah Lanford*, Ark. Public Defender Commission, for appellant.

*Tabitha B. McNulty*, County Legal Operations; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.