Cite as 2015 Ark. App. 87

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-899

| | |
|---|---|
| | **Opinion Delivered** FEBRUARY 11, 2015 |
| LINDA MOORE | |
| APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT |
| V. | [NO. JV-13-173] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN | HONORABLE BARBARA HALSEY, JUDGE |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Linda Moore appeals the August 2014 order of the Craighead County Circuit Court that terminated her parental rights to her two children: son RA born in October 2002 and daughter AD born in March 2006.[1] Appellant contends that neither of the two asserted grounds for terminating her parental rights was proved by clear and convincing evidence. Appellant does not challenge the finding that it was in the children's best interest to terminate parental rights. The Department of Human Services ("DHS") and the children's attorney ad litem filed separate briefs, asserting that termination of her parental rights was correct, not clearly erroneous, and should be affirmed. After conducting a de novo review, we affirm.

---

[1]The father of each child, RA's putative father Randy Arnold and AD's legal father Akot Acuil, also had parental rights terminated. Neither father participated in the DHS case, and neither father appeared for the termination hearing. Each was deemed to have abandoned his child. Neither father is part of this appeal.

SLIP OPINION

We review termination of parental rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2013); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997).

DHS alleged two grounds against appellant. The first ground was the "failure to remedy" ground, which is premised on Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)*:

> That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

The other ground was the "subsequent other factors or issues" ground found at Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)*. In making the "best interest" determination, the trial court was required to consider two factors, (1) the likelihood that the child will be adopted, and (2) the potential of harm to the child if custody is returned to a parent. *Tucker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 430, 389 S.W.3d 1; *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703.

Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.

SLIP OPINION

*J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). Credibility determinations are left to the fact finder, here the trial court. *Moiser v. Ark. Dep't of Human Servs.*, 95 Ark. App. 32, 233 S.W.3d 172 (2006).

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3) (Supp. 2013). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for the child. *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005); *Cole v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 203, 394 S.W.3d 318; *Tucker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 430, 389 S.W.3d 1. A parent's past behavior is often a good indicator of future behavior. *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, 427 S.W.3d 160. Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Pine v. Ark. Dep't of Human Servs.*, *supra*.

In this case, appellant's children RA and AD were removed from her custody in early May 2013 based on inadequate supervision and her drug use. There is no dispute that the children remained out of her custody for at least a year, given that the termination hearing was not conducted until August 2014. There is no dispute that DHS provided meaningful effort

SLIP OPINION

to rehabilitate appellant; she was given drug screens and presented an opportunity to complete inpatient rehabilitation. On the "failure to remedy" ground, appellant argues that there lacked clear and convincing evidence that she failed to remedy the causes for her children's removal. Appellant contends that at the end of this case plan, she no longer had a drug problem and that the trial court clearly erred in finding otherwise. We disagree with her and affirm on this ground without reaching the merits of the other ground.

The event that precipitated an emergency taking of these children was appellant's failure to pick up her son RA from school. As evening approached, RA was taken to the police station, and when appellant finally showed up accompanied by her daughter AD, appellant admitted to having ingested illegal drugs. She tested positive for THC and methamphetamine. Appellant had a history of protective-service cases with these and her other four children. The other four children were ultimately placed in three different custody or guardianship situations.

Following the adjudication of her children as dependent-neglected, appellant was ordered to complete certain requirements, the primary requirement to submit to and pass drug tests and become a stable, appropriate, drug-free parent. Over the following months, appellant was either in jail, she failed to submit to drug testing, or she tested positive for drugs. When she was referred to inpatient rehabilitation in September 2013, appellant was discharged within a week for noncompliance. By early February 2014, appellant was back in jail, facing a significant jail term for felony forgery and a drug-court violation.

In March 2014, DHS filed a petition to terminate parental rights, contending that appellant had not remained drug free and had not completed a drug-treatment program as to the "failure to remedy" ground. As to the "subsequent issues" ground, DHS alleged that appellant had not been employed and had periods of incarceration up to and including the present time. At the permanency-planning stage, DHS was deemed to have provided reasonable efforts, including provision of random drug screens and referrals. Appellant was found not to have made any substantial, measurable progress. The termination hearing was held on August 1, 2014, in the Craighead County Circuit Court.

At the hearing, a family service worker, Terri Blanchard, testified for DHS. She recited the causes for removal of RA and AD, as noted above. She recited a history of appellant having open family-services cases, the persistent problem being drug use. Blanchard's testimony showed concern for appellant's failure to work toward fixing her drug problem and noted her unavailability to work toward reunification due to being in and out of jail for various offenses.[2]

Blanchard provided details about appellant's drug tests. Appellant passed a screen in late May 2013 but then failed to produce urine for two tests in July 2013. Appellant had three positive tests for meth between August and early September 2013. Between October and

---

[2]Blanchard recited appellant's periods of incarceration: June 1 and 2, 2013 for driving on a suspended license; June 7, 2013 also for driving on a suspended license; June 24 through 29, 2013 for failure to appear; July 5 and 6, 2013 for driving on a suspended license; August 7 through 12, 2013 for failure to appear; August 14 through 27, 2013 for driving on a suspended license; December 30, 2013 through January 20, 2014 for felony forgery and theft by receiving; and February 7 through July 23, 2014 for felony forgery and a drug-court violation.

December 2013, appellant repeatedly failed to produce urine for testing purposes. She, however, did have two negative drug tests, in February and July 2014, on dates that were on either side of a lengthy incarceration. Blanchard explained that there were few home visits because, when she was not in jail, appellant lived in several different places. Appellant was, at present, living with her mother—who had custody of another of appellant's children—because she had just been paroled the week beforehand. This was not going to be a permanent living situation, nor was it large enough to accommodate RA and AD. Blanchard did give credit to appellant for having completed parenting classes and watching "The Clock is Ticking" video.

Blanchard stated that the children were adoptable with identified families interested in adoption. RA and AD's foster placement had at least one sibling in it and was among the families interested in adoption. The family service worker opined that it was in their best interest for termination of parental rights to take place.

Appellant testified, in agreement that she was incarcerated for significant periods of time, but she claimed to have taken anger-management, stress-management, and substance-abuse classes in jail. Appellant offered reasons, other than non-compliance, for her discharge from inpatient rehabilitation, but she acknowledged that "it took me going to prison to have this wake-up call." She said that since she had been released on parole in the last week, she was looking for work at fast food restaurants, although she admittedly never had a steady job or a stable place to live.

Appellant claimed that she could have taken care of her children even though she was a drug addict. She admitted to intentionally avoiding drug testing while she was using. She stated her belief, though, that she was not a drug addict any more. As to her claimed drug-treatment program during her most recent stint in jail, she admitted that she was released early and did not finish.

The attorney ad litem did not present any witnesses but urged the trial court to terminate the parental rights of the parents. The attorney ad litem agreed with DHS that appellant had not, after the children were out of her custody for fifteen months, remedied the primary reason for removal, that being drug use.

The trial court found that appellant's time had run out to remedy the situation. The trial court complimented appellant on recognizing that she needed a wake-up call while in jail but expressed only hope that appellant could actually be done with drug use. The trial court found that the grounds were proved by clear and convincing evidence, as well as that it was in the children's best interest to terminate parental rights. A timely notice of appeal followed the order terminating her rights.

As stated, appellant does not challenge whether termination of her parental rights is in RA and AD's best interest. Consequently, we need not address that issue. *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 242 SW.3d 305 (2006). Likewise, if the trial court's finding of either of the two alleged grounds is affirmable, we need not discuss the alternative ground to support termination. *Loveday v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 282, 435 S.W.3d 504. We hold that the trial court finding that appellant failed to remedy the

7

SLIP OPINION

causes for removal is supported by clear and convincing evidence. We, therefore, do not address the "subsequent issues or factors" argument because only one ground is necessary to terminate parental rights. *Bowman v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 477.

Appellant was an admitted active methamphetamine drug addict who nonetheless professed that she was not so impaired by drugs that she could not care for her children. Her only two negative drug tests were on either side of another lengthy incarceration. Appellant's self-serving statement that she did not believe she had any addiction and was not interested in drugs anymore need not have been believed by the trial court. *See Long v. Ark. Dep't of Health & Human Servs.*, 369 Ark. 74, 250 S.W.3d 560 (2007). Although recent progress and efforts to comply in the months and weeks leading up to a termination hearing may and should be taken into consideration, it is not a bar to termination of parental rights when a parent fails to demonstrate an ability to remain sober in an unstructured environment for significant period of time. *See Jessup v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 463, 385 S.W.3d 304. Our termination of parental rights statute bears this out in Arkansas Code Annotated section 9–27–341(a)(4)(A):

> A parent's resumption of contact or overtures toward participating in the case plan or following the orders of the court following the permanency planning hearing and preceding the termination of parental rights hearing is an insufficient reason to not to terminate parental rights.

There is clear and convincing evidence that appellant failed to remedy the causes for her children's removal. *See Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, ___ S.W.3d ___; *Loveday, supra; Guiterrez v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 575, 424 S.W.3d 329.

Affirmed.

GLADWIN, C.J., and VIRDEN, J., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.