

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-15-1010

| | |
|---|---|
| JEROD MILLER<br><br>           **APPELLANT**<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMANS SERVICES; T.M. and T.C., MINOR CHILDREN<br><br>           **APPELLEES** | **OPINION DELIVERED** MAY 4, 2016<br><br>APPEAL FROM THE SEARCY COUNTY CIRCUIT COURT [NO. 65JV-13-13]<br><br>HONORABLE TROY B. BRASWELL, JR., JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

### ROBERT J. GLADWIN, Chief Judge

Jerod Miller appeals the Searcy County Circuit Court's order of September 9, 2015, terminating his parental rights to T.M. (born 12/10/2005) and T.C. (born 12/03/2009).[1] Miller argues on appeal that, because there was no evidence on the likelihood of adoption and no finding that such evidence would not have mattered, the trial court erred in finding that termination of his parental rights was in the children's best interest. He further claims that we should reverse the trial court's finding that the Arkansas Department of Human Services (DHS) proved abandonment of an infant because DHS did not plead abandonment in its petition for termination of parental rights. We affirm in part and reverse and remand in part.

---

[1] Jerod Miller's parental rights were terminated to a third child, J.M., and this court affirmed that by separate opinion in the companion case, *Miller v. Arkansas Department of Human Services*, 2016 Ark. App. ___.

I. *Statement of Facts and Procedural History*

DHS filed a petition for emergency custody and dependency-neglect, and the trial court signed an ex parte order on July 23, 2013, wherein DHS was granted custody of the two girls, T.M. and T.C. The petition claimed that Sarah Coleen Cortez was the mother and Miller was the father of the two girls.[2] The attached affidavit stated that DHS had received a hotline call to conduct a risk assessment on the children on July 15, 2013, because T.C. was red and swollen from her vagina to her anus, with a "white slimy substance" oozing from her anus and vagina. Her daycare teachers both observed bug bites all over T.C. and boils on her legs. Both teachers had observed her anus and vaginal area to be very red, swollen, and abnormally sized. On July 19, 2013, a caseworker assessed T.C. and observed those things that had been reported. Miller agreed to allow T.M. and T.C. to be evaluated at Arkansas Children's Hospital, and the girls were given a full physical. The doctor reported concerns about the numerous bug bites on the girls and their general appearance. Both girls were dirty and had bruises. The doctor stated that the girls' skin tone was not normal. On July 20, 2013, DHS took a seventy-two-hour hold due to medical neglect, possible sexual abuse, and environmental neglect.

A probable-cause order was filed on July 30, 2013, wherein the trial court found that probable cause existed to issue the emergency custody order to protect the girls. No visitation was granted to either parent due to the sexual-abuse allegations.

---

[2] Sarah Coleen Cortez never appeared or participated in the case, and her rights were terminated by the order being appealed. However, she is not a party to this appeal, and the facts pertaining to her will be discussed in a limited fashion.

An adjudication order was filed on October 10, 2013, finding by a preponderance of the evidence that the girls were dependent-neglected. Miller stipulated to a finding of dependency-neglect as it related to environmental and medical neglect. The sexual-abuse allegations remained "outstanding concerns" for the court, but no finding was made as to those allegations. The girls remained in DHS custody because it was found to be in their best interest to do so in order to protect their health and safety. The goal of the case was reunification with a concurrent goal of adoption. Visitation for Miller was to be at the therapist's request. Miller was ordered to cooperate with DHS; keep DHS informed of his residence and place of employment; take medications as prescribed; refrain from the use of illegal drugs and alcohol; submit to random drug screens; complete parenting classes; obtain or maintain stable housing and employment or income; maintain a clean, safe home for himself and the girls; demonstrate an ability to protect the girls and keep them safe; submit to a psychological evaluation; attend individual counseling; attend family counseling as recommended; and comply with the terms of the case plan. He was also ordered to pay thirty-seven dollars per month to DHS for child support beginning October 17, 2013.

A permanency-planning order was filed July 8, 2014, with a finding that the goal of reunification with the father should continue "due to the lack of counseling provided by DHS to this point. It is not the fault of the father that the counseling has not been ongoing. The father has failed to comply in other areas[.]" It was noted that T.M. would remain in a residential-treatment facility and T.C. would remain in a foster home. The court found that Miller had failed to comply with the case plan and court orders because he had not maintained stable housing, had no employment, had no transportation, had tested positive

for illegal drugs, and had obtained new felony criminal charges relating to drugs. The trial court found that he had made no progress toward alleviating or mitigating the causes for the girls' removal from his home.

At the fifteen-month review hearing, the trial court found that the goal of the case should be changed to adoption, and DHS was ordered to file a petition to terminate parental rights. The court found that Miller had failed to comply in that he had a home, but it was not stable or hazard free. He had obtained new drug charges and a conviction since the last hearing in June 2014. He had been employed only since August 2014. He was unavailable for drug screens from May through September 2014. He had missed three of the last four counseling appointments and had not been truthful to the counselor regarding his drug involvement. He was not current on child support, and he was involved in a domestic altercation the night before the hearing.

DHS filed a petition for termination of parental rights alleging that the grounds for termination were that the children had been adjudicated to be dependent-neglected and had continued out of the home for twelve months, and despite a meaningful effort by DHS to rehabilitate the home and correct the conditions that caused removal, those conditions had not been remedied. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) (Repl. 2015). Further, DHS alleged that subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose to demonstrate that the return of the girls to the father's home was contrary to their health, safety, or welfare and that, despite the offer of appropriate family services, the parents had manifested the incapacity or indifference to remedy the subsequent issues or factors. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*).

Another ground alleged by DHS was that the girls had lived outside the home of the parent for a period of twelve months, and the parent had willfully failed to provide significant material support in accordance with their means or to maintain meaningful contact with the girls. Ark. Code Ann. Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)(*a*). Finally, DHS alleged aggravating circumstances. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*). DHS alleged that Sarah Cortez had abandoned the children, but this allegation was not directed to Miller.

At the termination hearing, Dayla Crabtree, a former DHS caseworker, testified in pertinent part that there had been no home visits in the last two years where the home was found to be appropriate for the children to return. She said that the environmental issues and the housing issues had never been fully remedied in this case. She stated that Miller began complying with counseling only after the case had been open for over a year. She also testified that Miller had obtained additional criminal charges since the case had opened. Those charges were for selling morphine pills to an undercover agent. Miller was convicted in October 2014 of delivery of a controlled substance and received sixty months' probation. He was ordered to pay child support, and in December 2014, a judgment for $1540 for nonpayment was entered. She said that he had paid since that time but that he was not current in his child support. She said that since the adjudication, "There had been further disclosures by the juveniles of sexual contact by Mr. Miller and them." T.M.'s therapist recommended no visitation between Miller and T.M., and Miller had not seen T.M. since July 2013. She said that from May to September 2014, Miller had no contact with DHS, and he was homeless during that time. She said that Miller tested positive on drug screens

over the course of the two years. However, in the six months preceding the hearing, those screens were negative.

Tina Jones, T.C. and J.M.'s foster mother, testified that the girls were doing well in her home.[3] She stated as follows:

I am married. My husband and I aren't open yet as a pre-adoptive home. That's something we're willing to do if the children are cleared for adoption, that is our intention. I would love to provide a forever home for T.C. and J.M.

Matt Kirchner, behavior specialist at Timber Ridge Neuro-Restorative Services, testified that he works with T.M. He said that T.M.'s biological mother attempted to drown her, and as a result she sustained a brain injury. He said that her IQ was at 58 and that she received physical therapy, occupational therapy, and speech services. He said that T.M. was physically and verbally aggressive and that the staff had to intervene and administer therapeutic holds to keep her from hurting herself or others. He said, "I have her on visual arms-reach supervision, and due to the impulsivity she thinks and she acts."

After Miller testified, the trial court ruled from the bench, terminating Miller's parental rights. The trial court found that Miller's living arrangement was unpredictable and unstable; that his testimony that his home was ready for the kids was not credible; that the subsequent-factors ground did not apply to him; and that DHS did not prove that Miller had failed to provide significant material support. The order terminating parental rights filed September 9, 2015, found that the conditions that caused removal had not been remedied by either parent, that the mother had abandoned the juvenile, and that the "parent" was

---

[3] As explained in the first footnote, J.M. is the child involved in a separate appeal.

found to have abandoned an infant. Miller filed a timely notice of appeal, and this appeal followed.

## II. *Applicable Law*

We review termination-of-parental-rights cases de novo. *Brown v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 725, at 4, 478 S.W.3d 272, 275. An order terminating parental rights must be based on a finding by clear and convincing evidence that one of the grounds stated in the termination statute is satisfied and that the sought-after termination is in the children's best interest. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, we ask whether the circuit court's finding on the disputed fact is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

Miller does not challenge the statutory grounds for termination; rather, he contends that the trial court's best-interest finding must be reversed. In making a "best-interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential of harm to the child if custody is returned to a parent. *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, 431 S.W.3d 364; *Harper v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 280, 378 S.W.3d 884.

While the likelihood of adoption must be considered by the circuit court, that factor is not required to be established by clear and convincing evidence. *Caldwell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 144, at 2, ___ S.W.3d ___, ___ (citing *Hamman v. Ark. Dep't*

*of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495). A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *Id.*

### III. *Adoptability*

Miller argues that the circuit court's best-interest finding was clearly erroneous because there was no evidence before it of the likelihood of adoption, and the trial court made no finding that such evidence would not have mattered. *Brown, supra*; *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383; *Williams v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 481; *Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28. Miller contends that the caseworker testified that she was asking that the children be cleared for adoption, but she said nothing about their adoptability. T.C.'s foster mother testified that she would like to adopt T.C., but she conceded that her home was not a preadoptive home. Miller argues, therefore, that neither witness testified as to adoptability. Miller also asserts that the trial court's order states that "Jennifer Matney" testified that there was a family who was interested in adopting T.C.; however, Jennifer Matney did not testify. Regardless, Miller complains that no one testified that they wished to adopt T.M. or made mention of her. The trial court ruled that adoption could not be ruled out for T.M., but Miller claims that there was no evidence about whether adoption could be ruled out for T.M. Therefore, Miller argues that there was no evidence of adoptability for either child.

Miller contends that *Williams, supra*, and *Lively, supra*, dictate reversal. In *Williams*, the circuit court terminated the father's parental rights to six children; however, there was no evidence offered at the termination hearing regarding the older two children's adoptability. *Williams*, 2014 Ark. App. 481, at 1. Clear error was found, even though the

older two children at issue were placed with a relative, and DHS had sought termination only as to the four younger children. *Williams*, 2014 Ark. App. 481, at 2. The circuit court had no evidence of the two older children's adoptability; nevertheless, termination was granted as to all six children. Thus, this court remanded for further proceedings regarding the two older children. *Williams*, 2014 Ark. App. 481, at 4.

In *Lively*, the circuit court terminated parental rights, citing its reliance on the CASA report and the DHS caseworker's testimony regarding the children's adoptability. *Lively*, 2015 Ark. App. 131, at 6–7, 456 S.W.3d at 387. However, this court's review of the record revealed no mention of adoptability in either the CASA report or the caseworker's testimony. *Id.* Accordingly, this court reversed and remanded for further proceedings.

DHS contends that the trial court's finding that the children were adoptable was not clearly erroneous, given the testimony of the caseworker, which implied that adoptability was not a serious issue, and that of the foster parent, who was willing to adopt T.C. DHS argues that adoptability does not have to be proved by clear and convincing evidence, *Reed v. Arkansas Department of Human Services*, 2012 Ark. App. 369, 417 S.W.3d 736, and that an adoption specialist is not required to testify at the termination hearing, *Fortenberry v. Arkansas Department of Human Services*, 2009 Ark. App. 352. DHS urges deference to the trial court's weighing of the testimony before it.

Based on our de novo review and the law cited by DHS, we hold that the trial court's finding of adoptability in regard to T.C. is not clearly erroneous. Despite the name used in the trial court's order, the record contains the foster parent's testimony that she and her husband wish to adopt T.C. It is well established that this court may affirm a trial court

when it has reached the right result, although it may have announced a different reason. *Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. 356. Thus, we affirm the trial court's termination of parental rights as to T.C.

However, we reverse and remand in regard to T.M. because our review of the record indicates no evidence about her adoptability. And, as argued by Miller, the trial court made no finding that such evidence would not have mattered.

> Our court has said that "[a]doptability is merely a consideration and not a requirement." *Grant v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 636, at 13, 378 S.W.3d 227, 233. Even so, "[c]onsideration requires evidence . . . or at least some finding by the trial court that other aspects of the best-interest analysis so favor termination that the absence of proof on adoptability makes no legal difference." *Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28, at 4. Therefore, under our prior cases, the circuit court's best-interest analysis will be insufficient unless there is some evidence regarding adoptability or the court explains why termination is in the best interest of the children regardless of their adoptability.

*Brown*, 2015 Ark. App. 725, at 5, 478 S.W.3d at 275–76. In *Haynes*, *supra*, we rejected DHS's argument that evidence of adoptability could be found in testimony suggesting that the minor children were persevering in their foster home. *Haynes*, 2010 Ark. App. 28, at 4. Here, we cannot accept DHS's argument that, by implication, the evidence supported the trial court's determination that adoption was not ruled out for T.M.

Accordingly, we reverse and remand for proceedings consistent with this opinion.

## IV. *Abandonment*

Miller contends that this court should reverse the trial court's finding of abandonment because DHS did not allege abandonment in its petition. Miller is wrong. DHS alleged that the mother abandoned the juvenile, without specifying which child, citing Arkansas Code Annotated section 9-27-341(b)(3)(B)(iv) and (ix)(*a*). In its order terminating parental

rights, the circuit court found that abandonment specifically applied to the mother, citing section 9-27-341(b)(3)(B)(iv), and to the "parent," citing subsection (b)(3)(B)(ix)(*a*). Therefore, we affirm the trial court.

Affirmed in part; reversed and remanded in part.

VAUGHT and HIXSON, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.