Cite as 2021 Ark. App. 420

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-21-278

KINYATA NICHOLS

APPELLANT

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES AND MINOR
CHILDREN

APPELLEES

**Opinion Delivered** November 3, 2021

APPEAL FROM THE SEBASTIAN
COUNTY CIRCUIT COURT, FORT
SMITH DISTRICT
[NO.66FJV-17-59]

HONORABLE ANNIE POWELL
HENDRICKS, JUDGE

AFFIRMED

## RAYMOND R. ABRAMSON, Judge

Kinyata Nichols appeals the Sebastian County Circuit Court order terminating her

parental rights to her children, E.H.1 (born in August 2009), E.H.2 (born in July 2010),

L.H. (born in May 2013), and A.H. (born in August 2014).[1] On appeal, she argues that the

circuit court erred by finding that it was in the best interest of the children to terminate her

parental rights. We affirm.

On December 11, 2017, the Arkansas Department of Human Services (DHS) filed a

petition for emergency custody and dependency neglect over E.H.1, E.H.2, L.H., and A.H.

In the affidavit attached to the petition, DHS alleged that the children's infant sibling, C.H.

(born in January 2017), had died on December 10 and had exhibited signs of shaken baby

---

[1]The circuit court also terminated the parental rights of the children's father, Robert
Henry. He is not a party to this appeal.

syndrome and malnourishment. On the same day the petition was filed, the court entered an ex parte order for emergency custody. The court entered a probable-cause order on January 29, 2018.

On February 7, the court adjudicated the children dependent-neglected based on Nichols's parental unfitness, inadequate supervision, and substance abuse. On June 27, the court held a review hearing and found that Nichols had not made significant progress and lacked insight as to the need for services.

The court held a permanency-planning hearing on November 28, and in the resulting order, the court noted that Nichols was scheduled for a January 2019 trial for charges of second-degree murder and endangering the welfare of a minor in relation to C.H.'s death. The court further noted that C.H.'s hair-follicle test was positive for methamphetamine. The court stated that all the children were receiving treatment for psychological trauma but that E.H.1's needs are the "most significant" and required "a more structured level of care." Thus, the court stated that she could not be placed with her siblings but could visit them when approved by her treatment team.

Following a second review hearing and a second permanency-planning hearing, DHS filed a petition to terminate Nichols's parental rights on February 4, 2020, and it alleged multiple grounds for termination.

On February 5, the court held another review hearing. The court found that Nichols had pled guilty to second-degree murder and endangering the welfare of a minor. She was sentenced to 120 months' imprisonment plus 240 months' suspended for second-degree

murder and 72 months' imprisonment for endangering the welfare of a minor, and the sentences were ordered to run consecutively.

The court held a two-day termination hearing on November 20 and December 18. At the hearing, DHS introduced Nichols's sentencing order. Dr. Jennifer Forsyth, the director of autopsy services for Arkansas Children's Hospital, testified that C.H. died of a craniocerebral trauma—which means injury predominantly to the head and neck—and that the cause of death was homicide.

Catharine Stransky, the DHS family service worker, testified that she had visited E.H.1, E.H.2, L.H., and A.H. monthly while they had been in DHS custody, and she had also attended their sibling visits and their therapy sessions. She stated that all the children are adoptable. However, she explained that E.H.1 suffers daily as a result of C.H.'s death and her own trauma in Nichols's home and that her adoption will "require extensive therapy and lots of hands-on work by [DHS] and the prospective adoptive parents." She noted that E.H.1 had been in treatment facilities during the case. Stransky explained that DHS's adoption specialist had COVID at that time but that she had communicated with the specialist about her efforts to look for adoptive placements for the children. She testified that the specialist indicated that E.H.1's adoption would take more time than the other three children due to her therapeutic recommendations. Stransky stated that E.H.1 would remain in DHS custody while she worked through the trauma, but she did not know for how long.

On March 25, 2021, the court entered an order terminating Nichols's parental rights based on multiple grounds. The court further found it was in the best interest of the children to terminate Nichols's parental rights, and it specifically considered the likelihood that the

children would be adopted and the potential harm on the health and safety of the juveniles caused by returning them to Nichols's custody. As to adoptability, the court found that all the children are adoptable. The court noted that E.H.1 "had suffered more severely from the trauma she has experienced and her treatment needs have been more extensive than that of her siblings. However, the court [found] that she is adoptable and that termination of parental rights will likely improve her emotional state and render her more readily adoptable." The court further found that, regardless of adoptability, it is in the best interest of the children for Nichols's rights to be terminated. This appeal followed.

We review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Dade v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 443, 503 S.W.3d 96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit court's personal observations. *Jackson v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 440, 503 S.W.3d 122.

The termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Fox v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735. As a result, a heavy burden is placed on the party seeking to terminate the relationship. *Id.* The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *T.J. v. Ark. Dep't of Hum. Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997); *Smith v. Ark.*

*Dep't of Hum. Servs.*, 2013 Ark. App. 753, 431 S.W.3d 364. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2021). The second step, the best-interest analysis, includes the consideration of the likelihood that the child will be adopted and the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).

On appeal, Nichols does not contest the circuit court's finding of the termination grounds. Instead, she argues that the circuit court erred by finding it was in the children's best interest to terminate her parental rights, and she specifically challenges the court's adoptability finding. She asserts that the evidence is insufficient to show adoptability because the DHS caseworker testified that E.H.1's adoption would take more time than her siblings' adoption, but DHS presented no evidence as to how E.H.1's separation would affect her or her siblings. She additionally asserts that DHS presented no specific evidence concerning E.H.1's trauma issues and how those issues affect her adoptability.

Adoptability is not an essential element in a termination case; rather, it is merely a factor that must be considered by the circuit court in determining the best interest of the child. *Tucker v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 430, 389 S.W.3d 1; *see also* Ark. Code Ann. § 9-27-341(b)(3). There is no requirement that an adoption specialist testify at the termination hearing or that the process of permanent placement be completed at the time of the termination hearing. *Fortenberry v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 352. Additionally, there is no requirement to prove this factor by clear and convincing evidence or to identify an exact family that, upon termination, would be willing to adopt the child. *See Reed v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 369, 417 S.W.3d 736.

The Juvenile Code does not require "magic words" or a "specific quantum" of evidence to support a circuit court's finding regarding adoptability. *Sharks v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 435, at 8, 502 S.W.3d 569, 576. It merely requires that if an adoptability finding is made, then evidence must exist to support it. *Haynes v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 28. Evidence that adoptive parents have been found is not required, *see McFarland v. Ark. Dep't of Hum. Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005), and neither is evidence that proves the child will be adopted. *Renfro v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 419, 385 S.W.3d 285. Further, the Juvenile Code does not require certainty, let alone a "guarantee," that siblings be adoptable as a group. *Corley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 397, at 9, 556 S.W.3d 538, 544.

In this case, we hold that the circuit court did not err in its adoptability finding. Stransky testified that she had interacted with the children throughout their time in DHS custody and that all the children are adoptable. Even though Stransky stated that E.H.1's adoption will take more time than her siblings' adoption due to her trauma recovery, the Juvenile Code does not require that siblings be adopted together. While keeping siblings together is a commendable goal and an important consideration, it is but one factor that must be considered when determining the best interest of the child. *Id.* (citing *Ark. Dep't of Hum. Servs. v. Couch*, 38 Ark. App. 165, 832 S.W.2d 265). Further, Stransky explained that E.H.1 is adoptable but that her adoption would require "hands-on work" by DHS. Moreover, the court found that, regardless of adoptability, it was in the best interest of the children to terminate Nichols's parental rights. Nichols had pled guilty to the murder of the children's sibling, and she had been sentenced to sixteen years' imprisonment. Given these

6

circumstances, we find no error by the circuit court, and we affirm the termination of Nichols's parental rights.

Affirmed.

GLADWIN and KLAPPENBACH, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana K. McClain*, attorney ad litem for minor children.