Cite as 2023 Ark. App. 95

# ARKANSAS COURT OF APPEALS
## DIVISION IV

No. CV-22-630

| | | |
|---|---|---|
| ALISSA MINCHEW | | Opinion Delivered February 22, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE PERRY COUNTY CIRCUIT COURT |
| V. | | [NO. 53JV-21-2] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | | HONORABLE SHANICE JOHNSON, JUDGE |
| | APPELLEES | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Alissa Minchew appeals from the June 12, 2022 order of the Perry County Circuit Court terminating her parental rights to her two minor children. She challenges the sufficiency of the evidence supporting the circuit court's finding that the termination was in the children's best interest.

I. *Facts and Procedural History*

This case began on January 21, 2021, when the Arkansas Department of Human Services (DHS) responded to a call concerning the family and found Minchew in an emotional state and asking DHS to take the children. She admitted using drugs and tested

positive for amphetamines, methamphetamine, benzodiazepine, and marijuana. DHS removed the children from Minchew's custody pursuant to an emergency hold.[1]

On January 25, DHS filed a petition for ex parte emergency custody and dependency-neglect regarding Minchew and her two children, Minor Child 1, born May 6, 2018, and Minor Child 2, born June 14, 2020. DHS alleged that the children were dependent-neglected due to neglect and parental unfitness. The affidavit attached to the petition detailed the incidents that led to the removal of the children on January 21. The same day, the circuit court granted DHS's petition.

A probable-cause hearing was held on February 1, and the circuit court found that probable cause existed for the emergency order to remain in place. The resulting order was filed on February 24, and the circuit court continued the children in DHS's custody. Minchew was permitted visitation with her children. She was ordered to cooperate with DHS; keep DHS informed of her contact information and her living and employment status; and attend medical appointments for the children when notified.

On February 26, the circuit court held an adjudication and disposition hearing. Based on the stipulation of the parties, the court adjudicated the children dependent-neglected on the ground of parental unfitness due to Minchew's illegal drug use. The children were ordered to remain in DHS's custody, and the goal of the case was established as reunification with the mother and a concurrent goal of guardianship with a fit relative. Additionally, the

---

[1]DHS amended this petition to add a named putative father on February 24, and the allegations remained the same.

circuit court ordered Minchew to maintain stable housing and employment; complete parenting classes; complete a psychological evaluation (and follow the resulting recommendations); submit to random drug screens; refrain from illegal drug and alcohol use; cooperate with DHS; take medication as prescribed; demonstrate the ability to protect the children; participate in counseling; complete residential drug treatment (and follow any discharge recommendations); and attend all medical appointments for the children. The resulting adjudication and disposition order was entered on March 24. The circuit court also found that DHS had not employed due diligence in identifying and providing notice to the children's relatives as required pursuant to Arkansas Code Annotated section 9-28-107 (Repl. 2020).

On September 22, the circuit court held a review hearing, with the resulting order entered October 29. In it, the circuit court found that that goal of the case would remain reunification with a concurrent goal of guardianship with a relative. Minchew was found to be in minimal compliance with the court orders and case plan. Minchew participated in an inpatient-treatment program, but she left prior to completing the program. She was found to have completely stopped participating in services, including a hair-follicle test, a psychological evaluation, and counseling. Minchew also had not consistently visited her children. The children had been in a fictive-kin placement, but DHS was seeking to remove them from that placement. The circuit court continued its prior orders and additionally ordered Minchew to complete inpatient drug treatment, submit to a hair-follicle test, and comply with the case plan and court orders.

On January 19, 2022, the court held a permanency-planning hearing, but the resulting order was not entered until March 31. In support of a goal change to adoption or guardianship with a fit and willing relative, the circuit court cited Minchew's admission that she was currently pregnant and using drugs; her failure to participate in outpatient drug treatment; her unemployment; her inconsistent visits; and her refusal of multiple drug screens. Minchew was found to have partially complied with the case plan and court orders. She completed inpatient drug treatment and a psychological evaluation. Minchew also submitted to a hair-follicle test. She needed to obtain a sponsor and participate in NA/AA meetings. She had also missed seven visits with the children, one visit due to a doctor's appointment and lack of transportation for two others. Minchew had also participated in counseling and last used drugs, other than marijuana, in October 2021. Additionally, the circuit court again ordered Minchew to comply with the case plan and court orders.

The day prior to the entry of the permanency-planning order, DHS and the attorney ad litem filed a joint petition for termination of parental rights (TPR). The TPR petition alleged that termination of Minchew's parental rights was warranted pursuant to three statutory grounds: the failure-to-remedy ground, Arkansas Code Annotated section 9-27-341(b)(3)(B)(i) (Supp. 2021) ; the subsequent-factors ground, section 9-27-341(b)(3)(B)(vii); and the aggravated-circumstances ground, section 9-27-341(b)(3)(B)(ix)*(a)(3)*. The petition also alleged that TPR was in the children's best interest.

A TPR hearing was held on June 13. The circuit court heard from three witnesses— Sandra Marfoglio-Hinton, Toni Trippet, and Minchew. Marfoglio-Hinton, an adoption

specialist with DHS, was the first witness. She testified that she believed the children are adoptable and stated there were 172 possible adoptive homes interested in adopting the sibling group of two.

Toni Trippet, the DHS caseworker for the family, testified that she had been assigned to the case for approximately nine months. Trippet recounted the history of the case and recalled that the case had been opened due to Minchew's drug use. Trippet confirmed that Minchew had completed drug treatment on November 18, 2021, but stated she relapsed, as evidenced by two hair-follicle tests from January and February 2022. Trippet informed the circuit court that Minchew refused four out of the last seven drug screens requested by DHS. Minchew also had not completed an additional hair-follicle test. Trippet detailed that Minchew had been involved in a relationship with John Oaks, and DHS had domestic-violence concerns regarding that relationship due, in part, to Minchew's own disclosures.

Trippet noted that Minchew's visitations never progressed from supervised to unsupervised. She detailed that Minchew did not pay attention to her children during the visits and was not consistent in her attendance. Trippet testified that she had not seen a bond between the children and Minchew and noted that the children call her "Alissa." Trippet did not believe Minchew had remedied the cause of her children's removal and believed the safety factors that caused the children to enter foster care still existed. Trippet testified that she believed the children would be at risk of potential exposure to illegal drugs as well as domestic violence if the children were returned to Minchew's custody. Trippet added that she had additional concerns related to the family due to the fact that Minchew

5

had recently given birth to her youngest child and was using expired prescription pills at the time of the third child's birth.

The third child was also in foster care because it had tested positive at birth for a substance that Minchew did not have a current prescription for. Trippet testified that she did not believe continued services would result in reunification with the family. She explained that her belief was based on that fact that DHS had been offering services since it first opened a protective-services case in 2020, and there had been "little to no progress" over the course of two years. Trippet did not believe that Minchew had benefited from any services and recommended that her parental rights be terminated.

Minchew testified that she was living with her grandparents and wanted additional time to reunify with her children. Minchew acknowledged that she was using an old prescription during her last pregnancy, but she stated she was trying to treat issues she was suffering from due to a wreck just days prior to the child's birth. Minchew did not seem to appreciate the seriousness of using an expired prescription. She addressed Trippet's testimony regarding the bond between her children and her. She explained that she was bonded with her first child but acknowledged that the second child was so young when the child was removed from her custody that they are not bonded in the same way. Minchew believed she could "turn this around" and "need[ed] another chance[.]"

At the conclusion of the hearing, the circuit court ruled that it was granting the joint petition and terminating Minchew's parental rights to her children. The written order was entered July 12, and Minchew filed a timely notice of appeal from that order on July 29.

II. *Standard of Review and Applicable Law*

This court reviews termination-of-parental-rights cases under a de novo standard. *Terry v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 591, 591 S.W.3d 824. Pursuant to Arkansas Code Annotated section 9-27-341(b)(3), an order terminating parental rights must be based upon findings proved by clear and convincing evidence. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Lively v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383. When the burden of proof requires clear and convincing evidence, the inquiry on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.*

Termination of parental rights is a two-step process that requires the circuit court to find at least one statutory ground for termination and that termination is in the juvenile's best interest. *E.g.*, *Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, at 8, 611 S.W.3d 218, 222–23. To make a best-interest finding, the circuit court is generally required to consider two factors: (1) the likelihood of adoption and (2) the potential harm that would result to the juvenile if he or she were returned to the parent's custody. *Id.*, 611 S.W.3d at 222–23. However, a best-interest finding as a whole—rather than each factor—must be supported by clear and convincing evidence. *Id.* at 9, 611 S.W.3d at 223. Further, on appeal,

an appellate court will give due deference to the circuit court's personal observations and ability to judge the credibility of witnesses. *Id.* at 8, 611 S.W.3d at 223.

### III. *Discussion*

Minchew asserts that de novo review will demonstrate that the TPR decision should be reversed because DHS failed to sufficiently prove that TPR was in the children's best interest because of the progress she made. *Lively v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383. Minchew argues that her progress warranted her request for more time rather than terminating her parental rights and forever severing the parent and child relationship.

Minchew states that it is of no consequence that she does not challenge the statutory grounds for TPR within this appeal because even if the circuit court correctly determined that statutory grounds for termination existed under Arkansas Code Annotated section 9-27-341(b)(3)(B), her rights cannot be terminated where there is not clear and convincing evidence that TPR was in the children's best interest. *See* Ark. Code Ann. § 9-27-341(b)(3)(A); *see also Lively*, *supra*; *Caldwell v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 102. Minchew maintains that she made sufficient progress such that she did not pose a potential danger to her children that would warrant the extreme measure of TPR.

Minchew acknowledges that her struggle with drug addiction affected her stability but claims that she was self-medicating and had resisted treatment because of her "apprehensi[on] about being prompted to recollect trauma" she endured at an early age. She urges that, despite her instability and delays in progress, she did participate in services—

including inpatient drug treatment and a psychological evaluation—and at the time of the TPR hearing, she was ready to diligently work toward reunification. Minchew restates a fair amount of the evidence presented at the TPR hearing, and she asserts that, although this court has stated that a parent's past can be a predictor of future behavior, this court has also held that it is erroneous for the circuit court to find that a parent's past necessarily dictates the future, calling it mere speculation. *See Ivers v. Ark. Dep't of Hum. Servs.*, 98 Ark. App. 57, 250 S.W.3d 279 (2007). Minchew argues that she participated in services, made some progress, was committed to her sobriety, and had moved to a stable environment by the time of the TPR hearing. Minchew claims that nothing in the record demonstrated that her children would have been harmed by a grant of additional time, and she submits that it is possible that the additional time would have weighed in the children's favor.

Within the permanency-planning order that resulted from the January 19, 2022 hearing, the circuit court again found that the concurrent goal of the case would remain guardianship with a relative. Yet, the record from the TPR hearing demonstrates that DHS did not notify relatives of the foster-care case until March 25, 2022. Despite finding that guardianship with a relative was a goal that was in the children's best interest throughout a good portion of the case, Minchew questions why the circuit court terminated her parental rights where DHS failed to sufficiently demonstrate that those relatives were not appropriate placement alternatives for these children.

Minchew notes that the only discussion regarding adoptability related to an adoption of these two children together, and there was no discussion regarding the effect the TPR

9

would have on the children's sibling. This court has noted that the effect a TPR decision has on the sibling relationship is a best-interest factor that may be considered. *Clark v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 286, 493 S.W.3d 782. By terminating Minchew's parental rights, the circuit court also terminated any rights of those relatives, whom DHS had reached out to approximately only three months prior to the TPR hearing. *See Suster v. Ark. Dep't of Hum. Servs.*, 314 Ark. 92, 97, 858 S.W.2d 122, 125 (1993).

We disagree and hold that, with respect to Minchew's sole challenge to the circuit court's best-interest finding, the record before us demonstrates that the circuit court did not commit clear error by terminating her parental rights in lieu of placing the children in the permanent custody or guardianship of relatives.

The court may determine whether it is in a child's best interest to terminate parental rights by considering the child's adoptability and the potential harm caused by returning the child to the parent. *E.g.*, *Cole*, 2020 Ark. App. 481, at 8, 611 S.W.3d at 222–23. Because Minchew fails to challenge either the statutory grounds or the adoptability factor of the circuit court's best-interest finding, this court is not required to address these issues on appeal. *E.g.*, *Easter v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 441, at 8, 587 S.W.3d 604, 608.

Regarding Minchew's challenge to the potential-harm finding, the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm, and past behavior may be considered as a predictor of potential harm. *E.g.*, *Cole*, 2020 Ark.

App. 481, at 9–10, 611 S.W.3d at 223. Additionally, evidence that supports the statutory grounds may also support a potential-harm finding. *Id.* at 9, 611 S.W.3d at 223.

Minchew does not dispute the circuit court's findings regarding the statutory grounds, and those contain factual findings that demonstrate evidence of potential harm. Minchew failed or refused multiple drug screens throughout the case; she was noncompliant with outpatient drug treatment; she failed to attend counseling; her visits with the children were inconsistent; and she lived with a man who was admittedly abusive to her. *See, e.g.*, *Smith v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 380, at 6, 653 S.W.3d 33, 36–37 (affirming best-interest finding based, in part, on appellant's lack of visitation); *Covin v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 259, at 12–13, 576 S.W.3d 530, 536–37 (affirming best-interest finding based, in part, on appellant's ongoing domestic-violence issues); *Bridges v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 50, at 7–8, 571 S.W.3d 506, 511 (noting that continuing drug use demonstrates potential harm to children).

We disagree with Minchew's argument that the circuit court's potential-harm finding was clearly erroneous because she was making progress with services. There is evidence in the record before us that her progress with services was inconsistent and unreliable, and moreover, she is asking this court to reweigh the evidence, which we will not do. *E.g.*, *Glover v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 278, at 10–11, 577 S.W.3d 13, 20.

Minchew also argues there was insufficient evidence to support a potential-harm finding because in *Rhine v. Arkansas Department of Human Services*, 2011 Ark. App. 649, 386 S.W.3d 577, this court held that perfect compliance is not required and reversed the

termination based on two isolated incidents of noncompliance. We hold that *Rhine* is distinguishable because here, unlike in *Rhine*, Minchew did not simply have a few lapses in judgment—rather, she consistently failed or refused drug screens throughout most of the case.

Minchew's argument that the circuit court's entire best-interest finding was erroneous because DHS failed to pursue the relatives named in this case also fails. Minchew cites the notices that DHS sent to five named relatives in this case; however, she failed to raise this argument before the circuit court. Accordingly, she is barred from raising it on appeal. *See, e.g., Cole*, 2020 Ark. App. 481, at 8, 611 S.W.3d at 222–23.

Even had Minchew preserved the issue for appeal, it would still fail to provide a path to reversal of the termination. Specifically, to even make a "least-restrictive-placement/relative argument" on appeal, at a minimum, there must be an appropriate and approved relative in the picture. *See, e.g., Thomas v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 457, at 7, 610 S.W.3d 688, 693 (noting where relatives have not been approved for placement and the children remained in foster care, the existence of potential relatives was not a basis to reverse a TPR decision). Here, the only evidence before us concerning relatives are the five notices, which provide no information other than the names and addresses of five potential relatives.[2]

---

[2]The review and permanency-planning orders note that at some point, the children were placed with fictive kin. Fictive kin, however, are not relatives.

Finally, there is no basis for reversal in Minchew's final argument that the circuit court's best-interest finding was clearly erroneous because it failed to consider how TPR would affect the children's relationship with Minchew's third child who was involved in a separate foster-care case. Minchew also failed to preserve this argument for appeal. *See Rocha v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 454, at 15, 637 S.W.3d 299, 309 (failure to raise sibling-separation argument at the TPR hearing). Moreover, Arkansas appellate courts have consistently held that sibling-separation arguments will not support reversal absent some evidence of a genuine sibling bond, which was not demonstrated in the record here. *E.g., Martin v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 192, at 6, 596 S.W.3d 98, 102 (holding that keeping siblings together is an important consideration but is not outcome determinative because the best interest of each child is the polestar—and evidence of a genuine sibling bond is required to reverse a best-interest finding based on the severance of a sibling relationship); *Corley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 397, at 9, 556 S.W.3d 538, 544 (holding that the Juvenile Code does not require certainty, let alone a "guarantee," that siblings be adoptable as a group). The only information in the record about the third child is that the child was born in May 2022—one month before the TPR hearing—and that the child was currently part of a separate foster-care case.

For the above-stated reasons, we affirm the termination of Minchew's parental rights.

Affirmed.

HARRISON, C.J., and KLAPPENBACH, J., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.